*So Ordered*
*Denied 10/27/08*
*Pet. Mawumden*

Joseph A. Foglia
67 Manhattan Avenue
Brooklyn New York 11206
201-31--7444

October 23, 2008

The Honorable Peter G. Sheridan
United States District Court
30 Walnut Street
Newark, New Jersey 07102

Re: Crim 06-807 PGS

I most respectfully beg the Court to read this letter. I was before your Honor on September 26, 2008 and was sentenced to a year and a day, four months home confinement and two years supervised release. The course which the remainder of my life will take may well depend on Your Honor. In order to speak for myself, without counsel, I respectfully decided to write this letter directly to the Court thereby avoiding any possible further misunderstanding as to the facts. I also ask the Court to take the time to re read the letters written on my behalf. I think they tell more of the measure of me than this horrendous situation.

At the hearing, your honor referenced the "course of conduct" in which I was engaged as a factor in the sentencing. Let me be clear that I have and continue to take full responsibility for my actions in failing to carefully assess the tax returns as filed and deducting what was not deductible on my tax returns. The returns did not identify the recipient of the funds which formed the basis for the deduction. Rather, the returns simply set down amounts. I did not inquire as to what the deductions represented and that is my responsibility.

The initial two returns filed for years ended 12-31-1999 and 12-31-2000 (the "Returns") which were prepared by a CPA. The inference was that the CPA had no "back up" information, other than a hand written "estimate of expenses" from me. The Returns formed the basis of the 2002 Federal Tax Audit (the "Audit"). The estimate of expenses prepared by me for the 1999 Return and modified and used by the CPA on that 1999 return were based on the deductions set forth in the Tax Return prepared by the same CPA for the year ended 12-31-1998. The deductions for the 12-31-2000 return were based on the 1999 deductions. The CPA who prepared the Returns denied having my checks and bank Statements. That estimate of expenses did Not list my daughters or my girlfriend as "expenses". The CPA prepared a return in 1999 and 2000 by taking my estimates in round numbers ($2,000) and modified them to what would appear to me to be real numbers ($2,137).

At the time the Audit commenced in early 2002, the Wellesley Companies by which I was retained or employed were under both State and Federal investigation. Everyone was aware of those investigations, including me. There were several newspaper articles describing issues regarding the entity and the investigations by the State.
The first CPA refused to handle the Audit. The Audit was handled by a "new" CPA, Mr. Roth, who specialized in defending audits. My New CPA prepared a revised set of books which reflected the fact that he used the checks and bank Statements to prepare the 1999 return; the

1

Honorable Peter G. Sheridan                           October 23, 2008
                                                      Page Two of Three

revised 2000 return was never prepared by New CPA or submitted to the IRS. I reviewed the "ledger" prepared by the new CPA and failed to properly identify and characterize deductions for several items including my daughter's rent and monies to my girlfriend, who in the past had worked for me and filed separate tax returns. My new CPA and the IRS Auditor, who specialized in auditing lawyers met, reviewed the 1999 revised return and settled the 1999 matter agreeing to apply the same settlement terms to the 2000 matter. I never met the IRS auditor. My new CPA had all my records, bank statements and checks. He settled with the IRS for both 1999 and 2000 years with one set of books. When settled, the IRS signed off and the added taxes were paid.

Thereafter, the US Attorney's office reopened the Audit and the Returns. The US Attorney's office applied to the Justice Department for permission to indict which was granted, I believe, in part, because the IRS Auditor failed to properly execute his duties regarding the audit of my tax returns and, in part, because of the deduction for the "per diem" fees attributed to my girlfriend, which were *not* on the Returns as originally filed. There was no written opinion and those conclusions are based on the recitation to me by my counsel of the events at a hearing in Washington, DC.

While that criminal investigation was in process, I met with my counsel, Mr. De Cotiis, and Mr. Roth, the new CPA who handled the Audit, to discuss the preparation of the tax return for the year ended 12-31-2001. The intention was to add a statement to the 2001 return which in effect said, we may not have all the information necessary to prepare an accurate return and may need to file an amended return. That 2001 return was prepared by the new CPA; the Statement was added; I signed it and filed it. The new CPA took as a deduction the very same "per diem" expenses as on the 1999 return, my daughter and my girlfriend. In my opinion, that was a carry-over mistake from the revised 1999 return which the new CPA did not prepare himself but had his staff prepare. I failed to pick up that deduction and am fully responsible for that oversight. That was my responsibility.

I respectfully believe that this "series of unfortunate events" is not a course of conduct, but a series of careless, sloppy and negligent actions, which apparently rise to the level of a crime for which I have accepted full responsibility. I should have seen and corrected the misstatements in the revised 1999 return and in the 2001 return. I did not. But, there was no plan, no scheme, no blueprint to concoct a cunning ploy, rather there was conduct which revolved around a single Audit and devolved into three "inaccurate" returns being filed and a final IRS Audit being contested by the US Attorney's office which formed the basis for the Criminal Indictment which led to the Plea to two counts and the sentencing.

Taxes were assessed on me for the years 1999, 2000 and 2001 which were based on my *reclassification* by the IRS as an employee and not as a lawyer for the Company. All my deductions were disallowed and thus, taxes in the amount of approximately $167,000 were assessed and paid. Interest and penalties remain outstanding.

Honorable Peter G. Sheridan                   October 23, 2008
                                              Page Three of Three

While I may have been able to present a defense to a jury, the very same impression pervades society as evidenced by Your Honor in the sentencing: I as a lawyer am held to a higher standard

in relying on my retained professional CPA to prepare my tax returns. I failed to live up to that standard. Effectively, I participated in the crime by not identifying the errors in the Returns and the Audit and must suffer the consequences. Neither CPA was charged with a crime.

I was and am too old and too tired and without further resources to take the chance that I could be sentenced to more time if I failed to plead and lost a trial. As it was, your sentence includes four months home confinement with a bracelet and two years supervised release which when added to the twelve months and a day aggregates forty months in the System. I will be almost 70 at the end of that time. I was a good, conscientious and fair lawyer for forty years. I was never arrested; I was never charged with a crime. I made an horrendous mistake in failing to scrupulously review the returns, relying on two CPAs who were not paying attention. There was no unreported income; no plan; no scheme; no course of conduct. There was a grievous error that carried over onto the two audited tax returns (1999 and 2000) and the third return (2001) filed while I was under a criminal investigation. In court, the focus was on a "course of conduct". As I hope I have explained to the Court's satisfaction, there was no such "course of conduct". In light of that fact, the sentence seems to me to be grossly disproportionate to the crime to which I pleaded and for which I accepted responsibility: Count 1-tax evasion for the year 1999 and count 7- making false statements.

I respectfully request that your Honor consider the facts as presented in this letter. The Course of Conduct which appears to be factual is not in fact so. Therefore, I believe your honor may have sentenced based on a set of facts which was not accurate.

I most respectfully request a modification of the sentence downward and "relief from civil disabilities". In the alternative, I ask that you, not necessarily modify the "time" of the sentence, but to enable me to be confined to home and be gainfully employed to rebuild my life and begin to repay the interest and penalties to the IRS. Many people around me rely on my ability to generate funds including my children and grandchildren. I pay for their educations and assist in steering their moral compass. That is vital to me as you can see from the several unrelated young lawyers who benefitted from my guidance and wrote to you to attest to that fact.

Your Honor, I have accepted fully my responsibility and believe that in these very difficult economic times, my incarceration serves very little if any useful purpose. I seek the mercy of the Court and once again request the modifications described above. I ask as a last resort that the place of confinement be modified to "Home Confinement".

                                              Respectfully Submitted,

                                              Joseph A. Foglia